**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **19-00215-01-CR-W-RK** |
| Patrick Michael Dingle, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

On June 26, 2019, a grand jury in this District returned a sixteen-count indictment against defendant Patrick Michael Dingle ("Dingle") and another individual. With regard to Dingle, the indictment specifically charged:

- Wire fraud conspiracy in violation of 18 U.S.C. § 1349 [Count One],

- Wire fraud in violation of 18 U.S.C. § 1343 [Counts Two to Ten], and

- Money laundering in violation of 18 U.S.C. § 1957 [Counts Eleven to Thirteen].

Presently pending before the Court are Dingle's (1) MOTION TO DISMISS COUNT ONE [Doc. 27], (2) MOTION TO DISMISS COUNTS TWO THROUGH TEN [Doc. 29], (3) DEFENDANT'S MOTION FOR BILL OF PARTICULARS [Doc. 32], and (4) MOTION TO DISMISS COUNTS ELEVEN AND TWELVE [Doc. 37]. All of the motions have been briefed by Dingle and responded to by the government. After full consideration of the legal arguments advanced by the parties, the undersigned recommends that all four of Dingle's pending motions be denied. In support of the recommendation, the Court submits the following report:

The right to be charged by a grand jury in an indictment is guaranteed by the United States Constitution for certain crimes. Specifically, the Fifth Amendment provides that: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." U.S. CONST. amend. V. In addition, the Sixth Amendment guarantees that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ." U.S. CONST. amend. VI. These rights, as well as the Fifth Amendment's "due process" clause, are brought to bear when a criminal defendant challenges the sufficiency of an indictment. *Russell v. United States*, 369 U.S. 749, 761, 82 S.Ct. 1038, 1045 (1962).[1]

The Supreme Court has set out a relatively simple test to determine whether an indictment is sufficient:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907 (1974) (*citing Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417 (1932) *and United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113 (1953)). This test ensures that a grand jury has considered and found all essential elements of the offense charged. *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998) (*citing United States v. Zangger*, 848 F.2d 923, 925 (8th Cir.1988)).

---

[1]    The Constitutional requirements are further implemented by the Federal Rules of Criminal Procedure which specify that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." FED. R. CRIM. P. 7(c)(1).

Case 4:19-cr-00215-RK    Document 57    Filed 06/02/20    Page 2 of 8

In considering a motion to dismiss an indictment for insufficiency, the Court must make a determination from the face of the indictment. Unlike civil litigation, there is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. *United States v. Nabors,* 45 F.3d 238, 240 (8th Cir. 1995); *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992). Although the Supreme Court initially set out the *Hamling* test in two prongs, in actual application, the test actually includes three requirements: (1) the indictment must contain the elements of the offense charged, (2) it must put the defendant on fair notice of the charges against him, and (3) it must enable the defendant to assert a double jeopardy defense. *See*, *e.g.*, *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012). In considering these requirements, the Court must be mindful that an indictment should not be read in a hyper-technical fashion and should be "deemed sufficient unless no reasonable construction can be said to charge the offense." *United States v. Morris*, 18 F.3d 562, 568 (8th Cir. 1998). Where the plain language of an indictment fails to alert a defendant of the "precise nature of the government's allegations," a bill of particulars can cure deficiencies in the indictment's form. *United States v. Dolan,* 120 F.3d 856, 866 (8th Cir. 1997).

The indictment may set out the elements in the words of the statute itself, if "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling,* 418 U.S. at 117, 94 S. Ct. at 2907-08 It is not necessary, however, "for a particular word or phrase [to] appear in the indictment when the element is alleged 'in a form' [that] substantially states the element." *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988). In general, an indictment is sufficient unless no reasonable construction can be said to charge the offense. *United States v. O'Hagan,* 139 F.3d 641, 651 (8th Cir. 1998).

3

## Count One

In 51 numbered paragraphs, the indictment in this case charges Dingle with wire fraud conspiracy through an alleged scheme whereby straw companies (whose ostensible owners qualified as socially and economically disadvantaged individuals or service-disabled veterans) were used to obtain small business program certifications and veteran-owned business certifications. According to the indictment, using these straw companies, Dingle obtained approximately $346 million in federal contract payments. Dingle argues that the indictment is deficient inasmuch as it fails to address all of the essential elements of wire fraud conspiracy.

At any trial in this case, the essential elements that must be established by the government to support a wire fraud conspiracy conviction under 18 U.S.C. § 1349 against Dingle are straightforward:

(1)     To or more persons, including Dingle, reached an agreement or came to an understanding to devise, make up, or participate in a scheme to commit wire fraud;

(2)     Dingle voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

(3)     At the time Dingle joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

*United States v. Hansen*, 791 F.3d 863, 870-71 (8th Cir. 2015). To prove a conspiracy to commit wire fraud, the government is not required to "demonstrate an agreement specifically to use the interstate wires to further the scheme to defraud; it is enough [for the government] to prove . . . that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable." *United States v. Feldman*, 931 F.3d 1245, 1257-58 (11th Cir. 2019).

Examining the four corners of the indictment, the Court concludes that the government has sufficiently included the elements necessary to obtain a valid Section 1349 conviction of Dingle.  Specifically, the indictment alleges that Dingle and others (who did not qualify as socially and economically disadvantaged individuals or service-disabled veterans) undertook to manage and control the daily operations and long-term decision-making of companies owned by individuals who otherwise met the criteria to qualify as socially and economically disadvantaged individuals or service-disabled veterans.  At this stage, it is not within the Court's province to judge the persuasiveness of the government's allegations or the merit of a defendant's response to the allegations.  Instead, "[i]n reviewing the sufficiency of an indictment, [the court] accept[s] the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Steffen,* 687 F.3d 1104, 1107 n.2 (8th Cir. 2012).  Adhering to that standard, the indictment alleges sufficient facts that accepted as true demonstrate that it was reasonably foreseeable to Dingle that interstate wires were being used in furtherance of a scheme to commit fraud against the government.

## Counts Two through Ten

Federal law makes it a crime to "to devise any scheme or artifice to defraud . . . by means of false or fraudulent pretenses [by transmit[ing] by means of wire . . . communication in interstate commerce . . . for the purpose of executing such scheme or artifice."  18 U.S.C. § 1343. The indictment charges Dingle with nine instances of wire fraud occurring on May 11, 2016, November 8, 2016, November 10, 2016, May 9, 2017, May 17, 2017, June 27, 2017, September 6, 2017, October 20, 2017, and November 29, 2017.  The involved government agencies included the Army, the Air Force, and the Department of Veterans Affairs and the amounts paid on the contracts awarded ranged from a little more than $916,000 to more than $6.9 million.

5

Dingle argues that the indictment is deficient inasmuch as it fails to address all of the essential elements of wire fraud. Specifically, Dingle asserts that the indictment fails to allege: (1) he "devised or intended to devise" the scheme to defraud, and (2) his knowing participation. As to these contentions, Counts Two through Ten of the indictment specifically incorporate by reference paragraph 1 of the indictment which alleges:

> From in or about June 2009 until in or about March 2018, [Dingle and others] did knowingly conspire with each other to devise and participate in a scheme to defraud the United States.

INDICTMENT [Doc. 1]. *See also* FED. R. CRIM. P. 7(c)(1) ("A count [in an indictment] may incorporate by reference an allegation made in another count.").

## Counts Eleven and Twelve

The indictment charges Dingle with illegal money laundering with respect to three instances of money transfers. Dingle attacks the sufficiency of the indictment as to two of the transfers, to wit: a transfer of $250,000 on February 19, 2016, and $20,647.10 on April 30, 2016. Dingle argues that both of these transactions occurred before the first alleged instance of wire fraud set out in the indictment (May 11, 2016) and thus cannot constitute "criminally derived property" under 18 U.S.C. § 1957 because the statute is confined to proceeds obtained after completion of criminal activity. The government disagrees with Dingle's analysis.

The Court agrees with the government. While the indictment charges certain specific acts of mail fraud beginning on May 11, 2016, it generally alleges that Dingle was engaged in a conspiracy to commit wire fraud dating to June of 2009. To establish criminal money laundering, the government must establish the defendant conducted or attempted to conduct a financial transaction that involved the proceeds of "specified unlawful activity." *United States v. Habhab*, 132 F.3d 410, 414 (8th Cir. 1997). However:

> Activity in furtherance of a scheme to defraud is, of course,
> specified unlawful conduct that can satisfy the requirements of
> [federal money laundering].  The government need not trace the
> laundered funds to a particular instance of fraud.  Furthermore,
> only part of the money involved in the transaction need be derived
> from the specified unlawful activity.

*Id*.  In light of the review standards for considering the sufficiency of an indictment, the Court

concludes that the indictment adequately alleges that the financial transactions on February 19,

2016, and April 30, 2016, respectively, involved the proceeds of specified unlawful activity

predating the transactions.

## Bill of Particulars

Dingle additionally moved the Court for an order directing the government to file a bill of

particulars.

> A bill of particulars serves to inform the defendant of the nature of
> the charge against him with sufficient precision to enable him to
> prepare for trial, to avoid or minimize the danger of surprise at
> trial, and to enable him to plead his acquittal or conviction in bar of
> another prosecution for the same offense when the indictment is
> too vague or indefinite.

*United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012) (*quoting United States v. Hernandez,*

299 F.3d 984, 989–90 (8th Cir. 2002)).  A bill of particulars is not required when an indictment

is sufficient to apprise the defendant of the charges against him. *See*, *e.g.*, *United States v.*

*Matlock*, 675 F.2d 981 (8th Cir. 1982).  Inasmuch as the Court has found that the subject

indictment is sufficient to permit Dingle to prepare his defense, a bill of particulars is

unwarranted in this case.  Moreover, the specific information sought by Dingle does not warrant

a bill of particulars.  Dingle's request seeks evidentiary details and is, in any reasonable reading,

an effort at mere discovery. The Eighth Circuit has held that a bill of particulars may not be used

for discovery purposes. *United States v. Hill*, 589 F.2d 1344 (8th Cir. 1979).

7

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Dingle's (1) MOTION TO DISMISS COUNT ONE [Doc. 27], (2) MOTION TO DISMISS COUNTS TWO THROUGH TEN [Doc. 29], (3) DEFENDANT'S MOTION FOR BILL OF PARTICULARS [Doc. 32], and (4) MOTION TO DISMISS COUNTS ELEVEN AND TWELVE [Doc. 37].

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**
