IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 19-00215-01-CR-W-RK |
| PATRICK MICHAEL DINGLE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION TO SUPPRESS AND REQUEST FOR *FRANKS* HEARING**

Before the Court is Defendant Patrick Dingle's Motion to Suppress and Return Evidence Seized in the Course of Illegal Searches. Defendant requests a *Franks* hearing on grounds that the search warrant affidavits failed to cite the statutes or regulations for the alleged violations, falsified material facts, and also failed to include material facts. For the following reasons, Defendant's motion should be denied.

## *I.    BACKGROUND*

Defendant Patrick Dingle was suspected of using the status of others to compete for federal contracts reserved for disadvantaged groups. (Affidavits[1] ¶¶ 7, 10) Specifically, he was thought to be using the status of Stephon Ziegler, an African-American, service-disabled veteran, and Rustin Simon, a Native American, to take advantage of federal programs designed to benefit companies controlled by their status-based owners. (Affidavits ¶¶ 7, 10, 35-37, 92) Defendant was suspected of making it appear that two businesses, Zieson Construction Company, LLC, and

---

[1] The affidavits are substantively identical, with only the attachments differing. (Compare Doc. No. 39-1, at pp. 44-61, with Doc. No, 39-2, at pp. 44-51.)

1

Simcon Corp, were run by Ziegler and Simon respectively, while Defendant actually controlled the companies and made long-term decisions for both.  (Affidavits ¶¶ 35, 37, 55, 61, 63)  Investigators also believed the affiliation of Zieson and Simcon rendered Simcon too large to compete for small business contracts.  (Affidavits ¶¶ 31, 96)

Although Zieson and Simcon's organizational paperwork purported to show that Zieson and Simcon were separate, unaffiliated businesses, managed by their respective owners, information provided by two unrelated sources indicated otherwise.  (Affidavits ¶ 32)  Both a confidential source who worked at Zieson and a Small Business Administration ("SBA") employee provided information that Zieson and Simcon were affiliated and that Defendant actually controlled both.  (Affidavits ¶¶ 32, 63)  Further investigation, including financial analysis, was alleged to have corroborated this information.  (Affidavits ¶¶ 69, 71-74, 106-109)

Specifically, the confidential source reported that Zieson and Simcon were located in one large, open office with cubicles in the interior and offices around the perimeter.  (Affidavits ¶¶ 40, 125, 127)  The confidential source stated she and others in the cubicles and offices worked on both Zieson and Simcon projects at the direction of Defendant.  (Affidavits ¶ 127)  An SBA employee provided information that Zieson and Simcon used the same server.  (Affidavits ¶¶ 96-98)  Simcon was later suspended because email correspondence evidenced an affiliation between Zieson and Simcon, thus making Simcon too large to compete.  (Affidavits ¶¶ 84, 96-98)  Financial analysis demonstrated large payments from Zieson and Simcon to METS, an LLC formed by Defendant.  (Affidavits ¶¶ 72-74, 106-109)  Additionally, the IP address used in Simcon's January 2016 online certification to the Government that Simcon was a qualified small business was associated with Zieson's server.  (Affidavits ¶ 91)  The phone number listed in Simcon's

annual filing with the Kansas Secretary of State was also associated with Zieson. (Affidavits ¶ 95)

On March 2, 2018, United States Magistrate Judge Sarah W. Hays issued search warrants for Defendant's home at 6513 Ridge Road, Parkville, Missouri, and Zieson's offices located at 1601 Iron Street, North Kansas City, Missouri. (Doc. Nos. 39-1, 39-2) Special Agent Chris Tauai, Veterans Administration – Office of Inspector General, provided the affidavits in support of the warrants. (Doc. Nos. 39-1, 39-2) The identical 155-paragraph affidavits were based on numerous sources of information, including the information provided by the confidential source and SBA employee, *supra*, financial records, records from title companies, and property and government records. The affidavits did not, however, include Zieson or Simcon's organizational and corporate documents.

The warrants were executed on March 6, 2018. (Doc. Nos. 39-1, at p. 63; 39-2, at p. 63) Law enforcement seized, *inter alia*, business records and electronically-stored information from both home and office computers and servers.[2] (Doc. Nos. 39-1, at pp. 64-65; 39-2, at pp. 64-73)

On June 26, 2019, an Indictment was returned charging Defendant with one count of wire fraud conspiracy, in violation of 18 U.S.C. § 1349; nine counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; three counts of money laundering, in violation of 18 U.S.C. § 1957; and

---

[2] The Government raised the issue of whether Defendant met his burden of establishing an expectation of privacy at 1601 Iron Street. Defendant asserted a privacy interest in his personal office, computers and information contained therein. (Doc. No. 53, at p. 4) For purposes of ruling the instant motion, this Report and Recommendation assumes without finding that Defendant had a privacy interest in his personal office and computers at 1601 Iron Street since evidence was not heard on this issue and the resulting conclusion is the same. *See generally Mancusi v. DeForte*, 392 U.S. 364, 369 (1968) ("It has long been settled that one has standing to object to a search of his office."). Moreover, the Government states it does not plan to use at trial TDM documents seized from a locked file cabinet in Defendant's office at 1601 Iron Street. (Doc. No. 49, at p. 11) The Wells Fargo IRA Statements, which were also seized from the locked file cabinet, were already in the Government's possession pursuant to a Grand Jury subpoena. (Doc. No. 49, at p. 11)

criminal forfeiture allegations pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 2, and 28 U.S.C. § 2461. (Doc. No. 1)

Now at issue is Defendant's Motion to Suppress and Corrected Memorandum in Support.[3] (Doc. Nos. 38, 74)  The Government responded with Suggestions in Opposition and an accompanying Memorandum in Support.  (Doc. No. 49, 50)  Defendant then filed a reply. (Doc. No. 53)  The Government filed an Evidentiary Hearing Brief (Doc. No. 76), which Defendant moved to strike.[4]  (Doc. No. 78)  Oral argument was held on the limited issue of Defendant's entitlement to a *Franks* hearing.  (Doc. No. 84)

## II. LEGAL ANALYSIS

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Probable cause "is not a high bar."  *Kaley v. United States*, 571 U.S. 320, 338 (2014).  It exists "when there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010)(citations omitted).  Probable cause is determined by the totality of the circumstances. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).  When analyzing probable cause, "[a]pplications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion."  *Id*.

An affidavit supporting a search warrant is presumed to be valid.  *Franks v. Delaware*, 438

---

[3] The corrected memorandum replaces Defendant's original memorandum in support, which appears at Document 39. The parties stipulated to the filing of the corrected version and that the Government's Suggestions in Opposition (Doc. No. 49) be deemed filed in response to the corrected version.  (*See* Doc. No. 74, at p. 1)

[4] Defendant's motion to strike is hereby denied.  Review of the Government's brief reveals that it merely summarized previously-filed pleadings in anticipation of the hearing and did not advance any new arguments.

U.S. 154, 171 (1978). In *Franks v. Delaware*, however, the Supreme Court set forth an exception to this presumptive validity. Under *Franks*, a defendant may request a hearing to challenge a search warrant on grounds "that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020). In order to be entitled to a hearing, a defendant "must show both (1) that the affiant [ ] 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *Id*. (quoting *United States v. Arnold*, 735 F.3d 896, 898 (8th Cir. 2013)(citing *Franks*, 438 U.S. at 155-56)) (emphasis added). "Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). The showing required to obtain a *Franks* hearing is "not easily met." *Id*.

Defendant first argues he is entitled to a *Franks* hearing because although the affidavits allege he was improperly obtaining federal set-aside contracts, they fail to cite the governing regulations and/or statutes. He specifically maintains the affidavits should have included citations to 13 C.F.R. §§ 124.105(c), 124.106, 125.11(g) and 38 U.S.C. § 8127, on grounds that the regulatory framework is complicated and would have helped Judge Hays "understand the complex interplay between the relevant statutes and regulations applicable to the small business concerns at issue, and thus, make an independent determination of whether there was probable cause to show that [Defendant's] conduct constituted a federal crime." This argument is misplaced.

The search warrants seek evidence of wire fraud, false statements, conspiracy, major fraud against the United States, and money laundering, all offenses proscribed by Title 18 of the United

5

States Code. *See* 18 U.S.C. §§ 371, 1001, 1031, 1956, 1957. This is not a regulatory case. Citation to the Code of Federal Regulations thus was not necessary to the probable cause findings. Even so, the affidavits set forth the substance of the relevant regulations, including provisions on control, compensation and impermissible affiliation between two businesses. (Affidavits ¶¶ 11-18, 19-29) The Court, therefore, finds that Special Agent Tauai did not omit such regulations in reckless disregard for the truth.

Similarly, Defendant's argument that he is entitled to a *Franks* hearing based on the affidavits containing false statements and omission of material facts -- namely omission of organizational paperwork -- must also fail. Defendant contends the affidavits should have included the following documents for purposes of determining control: (1) Zieson's Amended Operating Agreement, which showed that Stephon A. Ziegler was the sole member and only owner of Zieson (Doc. No. 74, p. 5) and gave Ziegler sole power and authority to manage Zieson (Doc. No. 74, pp. 5-6; Exh. 7); (2) Zieson's 8(a) Business Development Application and SBA Form and certification (Doc. No. 74, pp. 7-8; Exh. 9); (3) Zieson's Vetbiz Vendor Information Pages Verification Program (Doc. No. 74, pp. 8-9; Exh. 12); and (4) Simcon's Articles of Incorporation, showing Rustin Simon was the only director (Doc. No. 74, pp. 9-10; Exh. 15).

Relying on *XOtech v. United States*, Defendant argues that the Court must look to a limited liability corporation's organizational documents in order to determine control. 950 F.3d 1376, 1380 (Fed. Cir. 2020)("To determine who controls the decisions of a company, we look to the terms of its governing documents."). While this general proposition is correct, the context in which the statement is made must be considered. *XOtech* involved a bid protest for a service-disabled veteran contract where the operating agreement gave decision-making authority to three managers,

6

two of whom were not service-disabled veterans. *Id*. The Federal Circuit affirmed denial of the contract on grounds that "[t]o establish . . . control, one or more [service-disabled veteran] must be able to independently exercise control of all decisions, without the consent of any non [service disabled veteran]." *Id*. This holding supports the Government's position here that Defendant, who did not personally satisfy the federal status requirements, could not control Zieson and/or Simcon.

Defendant's argument that Zieson and Simcon's corporate documents should have been included with the affidavits ignores the very essence of the fraud alleged by the Government. The crux of the Government's case is based on the allegation that Defendant's actions were not consistent with Zieson and Simcon's respective organizational and corporate documents. The affidavits alleged that while the paperwork created an appearance that the businesses were owned and controlled in a manner that would entitle them to compete for the SBA and VA contracts, the actual day-to-day operations demonstrated otherwise, both with regard to control and affiliation. Recitation of these operations to establish probable cause instead of the organizational documents was, therefore, not done in reckless disregard for the truth.[5] The Court finds Defendant has failed to meet the rigorous standard to merit a *Franks* hearing.

Because Defendant failed to meet the first requirement for entitlement to a *Franks* hearing, no further analysis is necessary. However, even if Defendant had been able to establish that Agent Tauai knowingly and intentionally made false statements/omitted material information in reckless

---

[5] Although Defendant identifies numerous paragraphs in the affidavits which he contends contain material false statements or omission of material facts, the "central issue" -- as categorized by Defendant -- was whether Defendant improperly exercised control. (Doc. No. 74, at pp. 17-31) (*See also* Doc. Nos. 39-15, 50) Because the Court does not find Special Agent Tauai knowingly and intentionally made false statements/omitted material information in reckless disregard for the truth, each individual paragraph will not be addressed. Defendant's arguments are, instead, better suited for trial.

7

disregard for the truth and if such information was excised and/or included, the affidavits would still establish probable cause.

Multiple sources of information suggested that Defendant controlled Zieson and Simcon and that Zieson and Simcon were affiliated, thereby rendering them ineligible to compete for the federal contracts. *See* 13 C.F.R. §§ 121.103, 125.13; 38 C.F.R. §§ 74.4, 74.5. With regard to control, the affidavits allege a confidential source stated she worked on both Zieson and Simcon projects at the direction of Defendant. The flow of money to Defendant also evidenced that Defendant controlled both Zieson and Simcon.

With regard to affiliation, the affidavits allege Zieson and Simcon shared office space, equipment and employees. A confidential source reported being reprimanded for sending a Simcon-related email from her Zieson email account. Likewise, the IP address used in Simcon's January 2016 online certification to the Government that Simcon was a qualified small business was associated with Zieson's server. Simcon's annual filing with the Kansas Secretary of State listed a phone number associated with Zieson. The totality of these allegations establish probable cause that evidence of fraud and money laundering would be found. Defendant has failed to make the requisite substantial preliminary showing for a *Franks* hearing.

### III. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's Motion to Suppress and request for a *Franks* hearing.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from

8

the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ *Jill A. Morris*
JILL A. MORRIS
UNITED STATES MAGISTRATE JUDGE